Robert CONAWAY, Petitioner,

v.

WORKERS' COMPENSATION APPEAL BOARD (CITY OF PHILADELPHIA), Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs March 5, 1999.

Decided April 28, 1999.

---

Vatche Kaloustian, Philadelphia, for petitioner.

Sheryl G. Pincus, Philadelphia, for respondent.

Before McGINLEY, J., FLAHERTY, J., and RODGERS, Senior Judge.

McGINLEY, Judge.

Robert Conaway (Claimant) seeks review of the order of the Workers' Compensation Appeal Board (Board) that affirmed the grant by Workers' Compensation Judge Simmons of the City of Philadelphia's (Employer) petition for physical examination of Claimant pursuant to Section 314(a) of the Workers' Compensation Act (Act).[1]

Claimant worked as a firefighter for Employer for eighteen years before he became totally disabled on February 3, 1986, as a result of the following occupational diseases: coronary occlusive heart disease and chronic obstructive pulmonary disease both of which were causally related to his exposure to heat, smoke, fumes and gases while a firefighter. Claimant petitioned for occupational disease benefits under Section 108(o) of the Act, 77 P.S. § 27.1(o).[2] After hearings and the presentation of medical deposition testimony, the referee[3] granted Claimant's petition and found that Claimant was disabled by reason

---

1. Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 651(a). Section 314(a) of the Act provides:

 At any time after an injury the employe, if so requested by his employer, must submit himself at some reasonable time and place for a physical examination ... by an appropriate health care provider ... who shall be selected and paid for by the employer. If the employe shall refuse upon the request of the employer, to submit to the examination, ... a workers' compensation judge ... may, ... upon petition of the employer, order the employe to submit to such examination....

2. Section 108(o) of the Act provides:

 Diseases of the heart and lungs, resulting in either temporary or permanent total or partial disability or death, after four years or more of service in fire fighting for the benefit or safety of the public, caused by extreme over-exertion in times of stress or danger or by exposure to heat, smoke, fumes or gases, arising directly out of the employment of any such firemen.

3. Workers' Compensation Judges were known as referees prior to the amendments to Section 401 of the Act, 77 P.S. § 701, effective August 31, 1993. We will refer to the factfinder before the effective date of the amendments as a referee and

of chronic obstructive pulmonary disease and coronary occlusive disease with atherosclerosis, which were precipitated by his exposure as a firefighter based on the testimony of Harry Shubin, M.D. (Dr. Shubin). Employer appealed to the Board which affirmed.

On January 16, 1996, Employer notified Claimant of a scheduled independent medical examination with S. Chivukula, M.D. (Dr. Chivukula) for February 27, 1996. Claimant's counsel responded by letter dated February 2, 1996, and requested that the examination be canceled so that Claimant could review Claimant's medical records in Employer's file and that Employer schedule an examination with a physician in Florida, where Claimant resided. Dr. Chivukula submitted a notice to Employer that Claimant did not keep the scheduled appointment.

On March 4, 1996, Employer petitioned for physical examination of Claimant on the basis that he had not appeared at the examination scheduled with Dr. Chivukula. Claimant answered and alleged that Employer was barred from relitigating Claimant's irreversible total disability, citing *Hebden v. Workmen's Compensation Appeal Board (Bethenergy Mines, Inc.)*, 534 Pa. 327, 632 A.2d 1302 (1993).

At a hearing May 17, 1996, Employer submitted its January 16, 1996, letter to Claimant and the notice from Dr. Chivukula. Claimant submitted the referee's decision on the claim petition, the Board's opinion affirming the referee's decision, and Claimant's counsel's letter to Employer in response to the request for a medical examination. The record reflects that Claimant also submitted the September 11, 1986, deposition testimony of Dr. Shubin from the original proceeding.[4]

Workers' Compensation Judge Simmons' granted Employer's petition and made the following relevant findings of fact and conclusions of law:

> 6. The May 31, 1988 Referee decision was predicted [sic] on the medical testimony of Harry Shubin, M.D. Review of that testimony, reveals absolutely no opinion by Dr. Shubin that Claimant's condition was irre-

versible, to the contrary, Dr. Shubin expressly opined that Claimant could sooner or later return to some gainful occupation.

. . . .

*Conclusions of Law*

> 1. The burden was upon Defendant to establish its entitlement to a Section 314 physical examination of Claimant.
>
> 2. In light of the May 31, 1988 Referee decision finding Claimant to be permanently and totally disabled from occupational diseases under Section 108(*o*) of the Act, the present petition should also be addressed under the standards set forth in *Hebden v. W.C.A.B. (Bethenergy Mines, Inc.)* 534 Pa. 327, 632 A.2d 1302 (1993).
>
> 3. Based on the fact that neither the Section 108(*o*) occupational diseases within themselves have been established as being irreversible and Dr. Shubin's medical evidence, upon which they are founded, does not state that Claimant's conditions are irreversible, defendant would not otherwise be precluded from seeking an examination of Claimant.
>
> 4. With there being no showing that Claimant's conditions are irreversible in the first instance, the *Hebden* decision places no burden on Defendant to establish that Claimant's condition is changeable.

Workers' Compensation Judge Simmons' Decision, August 12, 1996, Findings of Fact No. 6, Conclusions of Law Nos. 1–4 at 3; R.R. at 26a.

Claimant appealed to the Board. The Board affirmed and held that based on this Court's holding in *McGonigal v. Workers' Compensation Appeal Board (City of Philadelphia)*, 713 A.2d 692 (Pa.Cmwlth.1998), Employer could compel the physical examination of Claimant regardless of whether Claimant had an irreversible occupational disease and was totally disabled from his time of injury job because there may be other suitable employment for Claimant based on his physical limitations and that those limitations could only be ascertained through a physical examination.

after the effective date as a Workers' Compensation Judge.

4. Employer states in its brief that Claimant submitted this deposition testimony. Workers' Com-

pensation Judge Simmons' opinion lists the deposition as a "Bureau Document." The record before us does not contain the hearing transcript, but because none of the litigants challenge Workers' Compensation Judge Simmons' findings re-

Claimant contends that Employer did not offer a compelling reason for an examination in view of the prior determination that he was totally and permanently disabled from occupational heart and lung disease.[5] Claimant asserts that Employer cannot subject him to a medical examination because his disability is total and permanent based on our Pennsylvania Supreme Court's decision in *Hebden v. Workmen's Compensation Appeal Board (Bethenergy Mines, Inc.)*, 534 Pa. 327, 632 A.2d 1302 (1993) and this Court's decision in *Fairmount Foundry v. Workmen's Compensation Appeal Board (Baylor)*, 702 A.2d 373 (Pa.Cmwlth.1997), *petition for allowance of appeal denied*, 553 Pa. 708, 719 A.2d 747 (1998).

In *Hebden*, Bethenergy Mines, Inc. attempted to terminate Thomas Hebden's (Hebden) benefits on the ground that he was no longer disabled due to coal worker's pneumoconiosis. *Hebden*, 534 Pa. at 328, 632 A.2d at 1303. Our Pennsylvania Supreme Court noted that the record indicated that coal worker's pneumoconiosis was irreversible, therefore, the attempt to terminate benefits on the ground that Hebden was no longer disabled from the disease constituted an attempt to relitigate whether Hebden had contracted an occupationally acquired pulmonary disease, the original issue. *Id.* at 331, 632 A.2d at 1305. The Supreme Court noted approvingly the Commonwealth Court opinion which stated that *res judicata* or issue preclusion prevents an employer from relitigating, by way of a petition to modify or terminate benefits, the original medical diagnosis underlying a referee's findings of a claimant's disability as of the date of the compensation award. *Id.* at 330, 632 A.2d at 1304.

In *Fairmount Foundry*, the referee determined on November 29, 1991, that Howard Baylor (Baylor) was totally and permanently disabled as of August 1987, due to an occupational lung disease (silicosis) which was causally related to his employment with Fairmount Foundry (Fairmount). The Board affirmed and no further appeal was taken. On April 4, 1994, Fairmount petitioned to compel Baylor to undergo an examination after he had refused Fairmount's request. Workers' Compensation Judge Eader dismissed the petition in part because Baylor had been found totally disabled in the original proceeding. The Board affirmed and found that the only reason Fairmount gave for requesting the medical examination was the "passage of time." *Fairmount*, 702 A.2d at 374.

On appeal to this Court, Fairmount contended that the Board committed an error of law when it affirmed the denial of its demand for a medical examination of Baylor. Fairmount argued that Baylor had not been examined for approximately seven years and therefore Workers' Compensation Judge Eader committed an abuse of discretion by denying the examination. Further, Fairmount argued that the Board and Workers' Compensation Judge Eader erred by interpreting that the *Hebden* decision placed a condition on an employer's right to an independent physical examination in occupational disease cases. We noted in our opinion in *Fairmount* that by the time it was on review by this Court Fairmount's position had evolved from the one it took before Workers' Compensation Judge Eader. Before us, Fairmount conceded it would not be permitted to examine Baylor in an effort to terminate benefits but contended that it was entitled to an examination pursuant to Section 314 of the Act to establish that Claimant may be able to work in a limited duty capacity. *Fairmount*, 702 A.2d at 374. This was crucial. Although not explicitly stated, we had determined that Fairmount failed to raise this issue before Workers' Compensation Judge Eader and preserve this issue before either Workers' Compensation Judge Eader or the Board. Second, we quoted the Board's explicit finding that Fairmount's basis for the examination was that the "passage of time" entitled Fairmount to an unconditional right to examine Baylor. Third, Fairmount had not listed this issue in its state-

---

garding the deposition we are able to conduct a review of the issues.

**5.** Our review is limited to determining whether constitutional rights were violated, whether an error of law was committed or whether necessary findings of fact are supported by substantial evidence. *Vinglinsky v. Workmen's Compensation Appeal Board (Penn Installation)*, 139 Pa. Cmwlth. 15, 589 A.2d 291 (1991).

ment of questions presented before this Court. It seems safe to assume that Fairmount only mentioned Baylor's capability to work in another capacity after a Board Commissioner raised the possibility in his dissent. Based on the record before the Workers' Compensation Judge Eader and the Board and this Court, there was no error of law or abuse of discretion committed as Fairmount's only assertion was that it had the unconditional and unqualified right to the examination based upon the "passage of time".

We affirmed and held:

As our Supreme Court noted in *Hebden,* the logical question is whether an employee's disability is changeable. If it is not, then any attempt to re-examine is merely a disguised attempt to relitigate what has already been settled. *Behory v. Workmen's Compensation Appeal Board (Bethenergy Mines, Inc.),* 166 Pa.Cmwlth. 66, 646 A.2d 31 (1994). Because Employer [Fairmount] has not offered any proof to establish that silicosis is reversible, we affirm the order of the Board.

*Fairmount,* 702 A.2d at 374.

Most important, Fairmount did not argue before Workers' Compensation Judge Eader that the demanded physical examination was to be used for filing a termination petition or for *Kachinski* purposes.[6]

However, in contrast to *Fairmount,* in *McGonigal* this Court held that a worker permanently disabled as a result of his duties as a firefighter must submit to a medical examination. In *McGonigal,* William McGonigal (McGonigal) experienced nausea, dizziness, lightheadedness, faintness and vomiting during a physical exertion test at a fire training school and had to be rushed to a hospital for emergency treatment. *McGonigal,* 713 A.2d at 692. McGonigal then petitioned for

benefits pursuant to Section 108(*o*) of the Act. The referee granted McGonigal's petition and found that he was partially disabled as a result of his almost twenty years of firefighting but concluded that he was totally disabled because Employer[7] made no attempt to show that there were light duty jobs available to McGonigal within his physical disability and commensurate with his age, education and experience. Almost sixteen years later, Employer scheduled a physical examination for McGonigal which McGonigal did not attend. Employer petitioned for a physical examination. The workers' compensation judge ordered McGonigal to submit to the examination because McGonigal's claim of an occupational disease did not mean that his disability was irreversible. The Board affirmed and McGonigal appealed. *Id.* at 693. We affirmed:

Just because a disease is classified as 'occupational' does not necessarily make the disease irreversible. For example, Section 108(i) of the Act, 77 P.S. § 27.1(i), characterizes 'infection or inflammation of the skin due to oils, cutting compounds, lubricants, dust, liquids, fumes, gasses, or vapor, in any occupation involving direct contact with, handling thereof, or exposure thereto' as an occupational disease. Once exposure to these agents has ceased, the resulting infection and/or inflammation would cease as well, making the condition reversible. This is especially true under Section 108(*o*) of the Act dealing with heart and lung diseases of firemen. That provision, which is at issue here, recognizes that an occupational disease may be reversible by providing '[d]iseases of the heart and lungs, resulting in either *temporary or permanent* total or partial disability or death', 77 P.S. § 27.1(*o*).... Given

---

6. The employer bears the burden of proof to modify a claimant's benefits based on a claimant's alleged ability to return to work. In *Kachinski v. Workmen's Compensation Appeal Board (Vepco Construction Co.),* 516 Pa. 240, 252, 532 A.2d 374, 380 (1987), our Pennsylvania Supreme Court adopted the following requirements which an employer must meet to satisfy its burden to modify compensation payments:

 1. The employer must produce medical evidence of a change in the employee's condition.
 2. The employer must produce evidence of a referral or referrals to a then open job (or

jobs), which fits the occupational category which the claimant has been given medical clearance e.g., light work, sedentary work, etc.
 3. The claimant must then demonstrate that he has in good faith followed through on the job referral(s).
 4. If the referral fails to result in a job then claimant's benefits should continue.

7. McGonigal and Claimant were both employed by the City of Philadelphia.

this section, it is possible that Claimant's occupational disease may be reversible.

Moreover, Hebden would not preclude Employer from seeking a physical examination even if Claimant's condition was irreversible. Hebden involved the issue of whether the claimant's coal worker's pneumoconiosis had improved so that he was no longer disabled by that condition, making termination of his benefits appropriate, and not whether Claimant's condition permitted him to take alternative employment. Just because a claimant has an irreversible disease does not mean that no alternative work is suitable. This is illustrated here because while we do not know what specific 'occupational' disease disabled Claimant; we do know that he was not totally disabled from all work as evidenced by his lightduty [sic] employment in 1980. The Referee in the claim petition proceeding found that Claimant was only partially disabled because of his occupational disease, but awarded total disability benefits only because Employer had failed to secure suitable alternative employment for him within his physical limitations. For Employer to secure suitable work, it needs to determine the extent of Claimant's disease and to identify what jobs may be suitable, thereby making a physical examination of Claimant a necessity. (Emphasis in original.)

*McGonigal,* 713 A.2d at 694.

In *Hebden,* our Pennsylvania Supreme Court held that an employer may not attempt to relitigate the original finding of a medical diagnosis of an irreversible occupational disease in the guise of a termination or modification petition. In *Fairmount,* we held that when a claimant was found in the original proceeding to have an irreversible occupational disease, then the employer may not compel a physical examination because of the mere passage of time without informing the workers' compensation judge that the petition was not meant to relitigate the original finding of a permanent disability, in other words a termination petition. *Fairmount* is similar to *Hebden* in that in neither case was there any objective reason given for the petitions. In *Hebden,* there was no basis to

terminate benefits for an irreversible occupational disease, and in *Fairmount* there was no basis to compel an examination other than the length of time since Baylor had been found to be totally disabled.

In *McGonigal,* on the other hand, the referee in the initial proceeding found McGonigal partially disabled from an occupational disease but awarded total disability benefits because Employer did not try to provide McGonigal with a list of potential jobs which he could perform given his health limitations. Further, approximately one year after the referee made this finding, McGonigal worked a light duty job. When Employer sought to compel McGonigal to undergo a physical examination, there was ample evidence to reflect that the requested physical examination was for *Kachinski* purposes. Unlike Fairmount, Employer had reasons, other than the passage of time, to believe that McGonigal could work in some capacity and the workers' compensation judge was so informed. Therefore, the workers' compensation judge in *McGonigal* did not abuse his discretion when he granted Employer's petition.

Here, in the original claim proceeding, the referee found based on the testimony of Dr. Shubin that Claimant suffered from the permanent occupational diseases of coronary occlusive heart disease and chronic obstructive pulmonary disease. Employer sought the medical examination of Claimant to determine his physical limitations for employment to aid in an attempt to find suitable employment under *Kachinski.* The WCJ made a determination that Claimant's condition did not preclude him from ever working in a position other than as a firefighter because Dr. Shubin testified in his deposition, which was initially presented at the original claim proceeding, that Claimant at some point could return to gainful employment.

 If a claimant has an irreversible occupational disease, it does not mean that an employer is precluded from requesting a medical examination. However, if the employer requests the medical examination based on the mere passage of time without stating that it is for *Kachinski* purposes and not to relitigate whether the disease is an

irreversible work-related disability, it is not an abuse of discretion for the workers' compensation judge to deny the request. On the other hand, when the employer asserts that it is requesting the physical examination to determine if the claimant is fit for other employment under *Kachinski* and is not attacking a prior decision as in *Hebden,* the workers' compensation judge must grant the request. Here, as in *McGonigal,* where Employer requested the medical examination for *Kachinski* purposes and had support in the record that Claimant was not totally and permanently disabled from every type of employment, Employer has the right to have Claimant submit to a medical examination.

Accordingly, we affirm.

### ORDER

AND NOW, this 28th day of April, 1999, the order of the Workers' Compensation Appeal Board in the above-captioned matter is affirmed.