**CITY OF PHILADELPHIA, Petitioner**

**v.**

**WORKERS' COMPENSATION APPEAL BOARD (SHANKS), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Jan. 14, 2005.

Decided March 1, 2005.

Reargument En Banc Denied April 22, 2005.

---

Martin G. Malloy, Philadelphia, for petitioner.

Jenifer Dana Miller, Philadelphia, for respondent.

BEFORE: McGINLEY, Judge, COHN JUBELIRER, Judge, McCLOSKEY, Senior Judge.

OPINION BY Judge COHN JUBELIRER.

The City of Philadelphia (Employer) petitions for review of an order of the Workers' Compensation Appeal Board (WCAB), which reversed an order of a Workers' Compensation Judge (WCJ), granting a Modification Petition. Employer argues that the WCAB erred in denying modification because Ronnie Shanks (Claimant) refused to accept an available position offered by Employer. At issue is whether, by accepting a position as a municipal employee, Claimant would have permanently lost "qualitative benefits" from his firefighter retirement pension plan, consequently, making the municipal position "unavailable" to him.

The WCJ found that the Claimant began working as a firefighter and emergency medical technician for the City of Philadelphia in August of 1987. Claimant testified that on March 14, 1990, while on duty, he suffered tremendous pain in his neck. As a result of this injury, Claimant began to collect workers' compensation, non-service-related pension benefits, and social security benefits. After seeing a number of doctors and vocational consultants, Claimant eventually received medical clearance to return to work in the capacity of a fire communications dispatcher. On January 25, 1996, Employer informed Claimant that a fire communications dispatcher position had opened and he was to report for work on February 5, 1996. Claimant, however, never reported for work.

Because Claimant refused the dispatcher position, Employer filed a "Petition to Modify or Suspend Claimant's Compensation Benefits" for the period commencing after his clearance to return to work on February 5, 1996. Claimant, in opposition, asserted that Employer failed to make a

good faith job offer. (WCJ Adjudication, Finding of Fact (FOF) 2).

The WCJ determined that Claimant's failure to accept the fire communications dispatcher position constituted bad faith and, thus, approved Employer's Petition for Modification of Benefits. On appeal, the WCAB reversed, concluding that Claimant, in accepting the fire communications dispatcher position, would have effectively forfeited the normal retirement age of forty-five for firefighters, thus, causing him a loss of "qualitative benefits" and, therefore, making the fire communications dispatcher position unavailable to him. Employer appeals that decision to this Court.[1] We must determine whether the dispatcher job was "available" to Claimant.

■ Our state Supreme Court has created the following principles, which govern the return to work of injured employees. First, the employer, who seeks to modify a claimant's benefits on the basis that he has recovered some or all of his ability to work, must produce medical evidence of a change in condition. *Kachinski v. Workmen's Compensation Appeal Bd. (Vepco Constr. Co.)*, 516 Pa. 240, 252, 532 A.2d 374, 380 (1987). Second, the employer must offer evidence of a referral to an actually available job, which is within the occupational category for which the claimant has been given medical clearance. *Id.* Third, the claimant must demonstrate that he has, in good faith, followed through on the job referral. *Id.* Finally, if the referral fails to result in a job, then claimant's benefits should continue. *Id.*

■ Our inquiry revolves around the second element of the *Kachinski* test, which requires the employer to prove that it referred the claimant to an "actually available job." The Pennsylvania Supreme Court, over thirty years ago, established the general rule that a job will be considered "available" if it is one that the claimant is capable of obtaining. *Barrett v. Otis Elevator Co.*, 431 Pa. 446, 246 A.2d 668 (1968). More recently, however, it has further explained that a job is not available if, upon taking the position, the claimant would suffer a loss of "qualitative benefits" associated with the claimant's former position. *St. Joe Container Co. v. Workmen's Compensation Appeal Bd. (Staroschuck)*, 534 Pa. 347, 352, 633 A.2d 128, 130 (1993)(adding to the *Kachinski* test the inquiry, "whether the job is, in essence, unacceptable for some reason unrelated to the employee's physical abilities or his conduct in connection with a valid job referral, thus rendering it unavailable to the Claimant"). For instance, if the claimant would forfeit the seniority, security and associated union benefits to which he was entitled in his former position as a result of taking a new position, qualitative benefits would be lost, making the position unavailable under the law. *Id.*, 534 Pa. at 354, 633 A.2d at 131. On the other hand, the Supreme Court has explained that qualitative benefits are not lost when those benefits are merely suspended. *City of Philadelphia v. Workers' Compensation Appeal Bd. (Szparagowski)*, 574 Pa. 372, 831 A.2d 577 (2003).

---

1. We review this case under a substantial evidence standard. The Administrative Agency Law, which governs appeals taken by persons aggrieved by agency adjudications, provides that a reviewing court shall affirm the adjudication unless it shall find that the adjudication is in violation of the constitutional rights of the appellant, or is not in accordance with law, ... or that any finding of fact made by the agency and necessary to support its adjudication is not supported by substantial evidence. 2 Pa.C.S. § 704. Substantial evidence has been defined as relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *York Terrace/Beverly Enterprises v. Workmen's Compensation Appeal Bd. (Lucas)*, 140 Pa.Cmwlth. 75, 591 A.2d 762, 764 n. 5 (1991).

In *Szparagowski*, two claimants, individually, were injured while working as firefighters for the City of Philadelphia. As a result, both retired and began collecting vested pension benefits from the City's Plan X. The City then offered each claimant a job as a fire communications dispatcher, which each was physically capable of completing despite his injury; however, both refused the positions. The City, thereafter, filed petitions for modification of the claimants' benefits due to what was alleged to be bad faith refusals of available positions. Both claimants asserted that the City failed to give them a feasible alternative, because accepting the dispatcher positions would disqualify them from receiving their pension payments. The Supreme Court consolidated the two petitions to consider the common question of whether a temporary suspension of pension benefits constitutes a loss of a "qualitative benefit," thus, justifying a refusal to accept employment within the claimants' physical limitations. In its opinion, the Court distinguished between a claimant being asked to "*forfeit* a qualitative benefit," as in *St. Joe Container,* and being asked to "merely *temporarily forego* pension payments to which they are only entitled upon retirement from the City." *Id.* at 381–382, 831 A.2d at 582. In *Szparagowski*, had the Claimants accepted the jobs, they would have ceased to receive the pension payments only while re-employed, and the pension payments would have resumed in full when their municipal employment ceased. *Id.* In its opinion, the Court reasoned that:

> [b]y being offered jobs as fire communications dispatchers, Claimants are simply being asked to choose between working for the City and collecting their pensions. If they choose to resume work for the City, they will receive compensation for their work, but will forego present pension payments. If, on the

other hand, they desire to continue collecting their pension benefits, they must officially retire from the City's employ and forego further City paychecks. This choice is no different than that which any non-injured City employee with a vested pension faces and thus, is the very choice Claimants would have had if they had never suffered a work-related injury.

*Id.* at 384, 831 A.2d at 583. Importantly, if a former firefighter who had been receiving a pension under Plan X, accepts and then retires from a civilian job, "he will not under any circumstances, receive lower monthly pension benefits than those he received prior to his re-employment in the civilian position." *Id.* at 382–383, 831 A.2d at 583. Accordingly, our Supreme Court held that "offering Claimants City jobs within their physical limitations that permit Claimants to both retain their vested pensions and accumulate additional pension benefits is more than sufficient to satisfy the City's obligation to offer Claimants available jobs that do not deprive them of qualitative benefits associated with their pensions." *Id.* at 384, 831 A.2d at 584.

The question of whether Claimant, here, would suffer a loss of qualitative benefits associated with his former position, if he accepted the proffered job, also turns on the intricacies of the City's pension plans. James Kidwell, the Pension Program Administrator for the City of Philadelphia, whom the WCJ found credible, explained that Employer has two distinct plans of relevance here: Plan X, which is the pension plan for firefighters, and Plan J, which is the pension plan for municipal employees. Under Plan X, the minimum retirement age is forty-five. Plan J, however, has a minimum retirement age of fifty-five. (WCJ Adjudication, FOF 10(b)). Additionally, Plan X is generally consid-

ered to offer a better financial return, when compared with Plan J. (WJC Adjudication, FOF 10(c)).

In determining whether Claimant would suffer a loss of qualitative benefits associated with his former position, we must consider the effect of re-employment on his entitlement to pension benefits under the plans. Kidwell explained that Plan X employees, who have reached the minimum retirement age of forty-five, can retire and return to work as civilian employees. (WCJ Adjudication, FOF 10(b)). Re-employment as a civilian employee would place the individual under Plan J. *Id.* This would then postpone his receipt of benefits of the otherwise vested Plan X pension until the individual ended his employment with the City. *Id.* In short, if a retired firefighter, currently receiving a Plan X pension, decided to return to work for Employer at a municipal position, then Plan X retirement benefits would be suspended during the period of reemployment in the municipal position. This was the situation in *Szparagowski.* However, Kidwell also explained that a Plan X employee who has *not* reached the minimum retirement age is in a different position. An employee under the age of forty-five who is re-employed in a civilian position under Plan J *forfeits* Plan X benefits. (WCJ Adjudication, FOF 10(b)). Although his service time under Plan X rolls over to Plan J, he will not be entitled to any of the benefits associated with Plan X. *Id.* This is the situation Claimant was cast into when faced with deciding whether to accept the position of fire communications dispatcher.

We, therefore, agree with the Board that *Szparagowski* can be distinguished from the present case. In *Szparagowski,* the claimants had reached the minimum retirement age of forty-five required under Plan X; therefore, they would not lose their Plan X benefits. In the present mat-

ter, however, the forty-three year old Claimant was two years younger than the minimum retirement age of forty-five. Although Claimant had vested under Plan X due to his five years of service, unlike the claimant in *Szparagowski,* he had not reached the minimum retirement age under Plan X. Thus, he was vested in the retirement system, but not yet entitled to receive Plan X benefits. Upon re-employment, Claimant would be placed in Plan J, and would forfeit his entitlement to pension benefits afforded by Plan X. (WCJ 3). The five years Claimant had already served in the city's fire department would be credited only to his new, and less favorable, pension plan, Plan J. He would not be able to retire until age fifty-five, and would not receive as favorable a financial return. Therefore, unlike the situation in *Szparagowski,* Claimant here would be forced to work an extra ten years before retiring, and would never be entitled to the retirement benefits of Plan X, which were benefits associated with his former position. We, thus, conclude that the fire communication's dispatcher job was "unavailable" to Claimant because he would have suffered a "qualitative loss" in benefits associated with his former position by permanently forfeiting the Plan X benefits and instead, being placed in the less favorable Plan J.

Accordingly, based on the foregoing analysis, we affirm the order of the WCAB.

### ORDER

NOW, March 1, 2005, the order of the Workers' Compensation Appeal Board in the above-captioned matter is hereby affirmed.