Paul LINTON, Petitioner

v.

WORKERS' COMPENSATION APPEAL BOARD (AMCAST INDUSTRIAL CORPORATION), Respondent.

Commonwealth Court of Pennsylvania.

Argued Feb. 28, 2006.

Decided March 28, 2006.

Alan B. Ziegler, Reading, for petitioner.

Zachary M. Rubinich, Philadelphia, for respondent.

BEFORE: PELLEGRINI, Judge, FRIEDMAN, Judge, and McCLOSKEY, Senior Judge.

OPINION BY Judge FRIEDMAN.

Paul Linton (Claimant) petitions for review of the August 29, 2005, order of the Workers' Compensation Appeal Board (WCAB), which affirmed the decision of a workers' compensation judge (WCJ) granting the Petition for Expert Interview of Employee (Petition) filed by Amcast Industries Corporation (Employer). We affirm.

Claimant has been receiving temporary total disability benefits for an April 27, 1998, work injury. Claimant participated in a vocational interview on March 15, 2001. Based on that interview, Employer

filed a modification petition, which was denied by WCJ Brian J. Eader on January 30, 2003.[1]

On May 21, 2004, John Perry, M.D., examined Claimant on Employer's behalf. Thereafter, by letter dated July 26, 2004, Employer requested Claimant to participate in a second vocational interview. Claimant did not do so, and, on August 27, 2004, Employer filed a Petition, seeking an order to compel Claimant to attend a vocational interview. Claimant filed an answer, alleging in part that section 306(b)(2) of the Workers' Compensation Act (Act)[2] does not require a claimant to submit to more than one vocational interview and that neither the Act nor any applicable regulations permit multiple vocational interviews.

The Petition was assigned to WCJ Brian Puhala. The parties agreed that no facts were in dispute, and the record was closed upon submission of the parties' briefs. In a decision dated November 30, 2004, WCJ Puhala concluded that: (1) section 306(b)(2) of the Act provides that an insurer may require an employee to submit to an interview by a vocational expert for purposes of determining the employee's earning power; (2) section 314(a) of the Act, 77 P.S. § 651(a), authorizes a WCJ to order a claimant to attend "such further ... expert interviews as the [WCJ] shall deem reasonable and necessary"; and (3) applicable regulations do not address the number of vocational interviews permitted or prohibited. WCJ Puhala further concluded that: (1) it is reasonable and necessary for an employer to assess the earning power and physical capabilities of an injured worker, which may change for better or worse over time; and (2) it is reasonable and necessary for Employer here to seek to reassess Claimant's earning power three years after the last vocational assessment and following the physical examination of Dr. Perry. Accordingly, WCJ Puhala granted Employer's petition and directed Claimant to submit to a vocational interview at a time and place to be determined by the parties.

■ Claimant appealed to the WCAB, and, at the same time, Claimant filed a request with the WCAB for supersedeas. By order dated January 4, 2005, the WCAB granted supersedeas pending oral argument scheduled for the following month. On February 14, 2005, the WCAB revoked its prior order and denied supersedeas. (R.R. at 210, 227, 228.) In this appeal, Claimant argues that the WCAB's denial of supersedeas violated Claimant's constitutional rights to due process and equal protection.[3] Claimant further asserts that the denial of supersedeas placed him in the untenable position of having to choose between his right to appeal to the WCAB and his right to receive compensation. Claimant asserts that if he submitted to the interview, his appeal would be rendered moot, and if he refused to submit to the interview, his benefits would be subject to suspension.

1. WCJ Eader's January 30, 2003, decision and order were made part of the record of this case. (Judge's Exhibit # 2, R.R. at 165–183.) In denying Employer's modification petition, WCJ Eader rejected the testimony of Employer's vocational expert, citing her lack of qualifications, lack of neutrality and flawed methodology. (WCJ's Eader's Findings of Fact, Nos. 18–34, R.R. at 169–171.)

2. Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 512(2).

3. According to Claimant, the WCAB denied supersedeas on the grounds that supersedeas is available under the Act only with respect to the payment of compensation. However, the record does not reflect the basis for the WCAB's decision.

The grant or denial of supersedeas is a matter of the WCAB's discretion. *Blairsville Transport Company v. Workmen's Compensation Appeal Board (Steele)*, 15 Pa.Cmwlth.616, 328 A.2d 911 (1974). In considering a request for supersedeas, the WCAB considers whether the petitioner has shown that: (1) the petitioner has a likelihood of prevailing on the merits; (2) the petitioner will suffer irreparable harm without the requested relief; and (3) the issuance of a stay will not substantially harm other interested parties or adversely affect the public interest. 34 Pa.Code § 111.21(a)(6). Here, in his request for supersedeas, Claimant did not allege that he would suffer irreparable harm if supersedeas were denied. (R.R. at 209–10.) In this regard, we note that if Claimant's benefits had been suspended for failure to attend the vocational interview and Claimant then had prevailed on appeal to this court, Claimant would be entitled to receive all compensation due from the date of the WCJ's order.[4] In addition, where, as here, the circumstances are capable of repetition yet likely to evade review, courts may elect to decide controversies that otherwise have been rendered moot. *Flynn–Scarcella v. Pocono Mountain School District*, 745 A.2d 117 (Pa.Cmwlth.2000). Accordingly, we conclude that the WCAB did not abuse its discretion in denying Claimant's request for supersedeas.

In its August 29, 2005, decision, the WCAB determined that sections 306(b)(2) and 314(a) of the Act are in *pari materia* because they both relate to vocational interviews of claimants, and the WCAB construed the two sections as permitting more than one vocational interview. The WCAB explained that a contrary holding would render an employer unable to ascertain the earning power of an injured employee after one interview, and, because the circumstances surrounding a claimant's incapacity may have changed over time, the WCAB characterized such a result as absurd and unreasonable. The WCAB rejected Claimant's contention that allowing multiple interviews would subject a claimant to perpetual harassment, noting that section 314(a) expressly requires that any subsequent expert interview be deemed reasonable and necessary by a WCJ. Finally, the WCAB rejected Claimant's argument that Employer failed to establish that its request for a second vocational interview was reasonable and necessary. Accordingly, the WCAB affirmed the WCJ's decision, and Claimant now appeals to this court.[5]

Section 306(b)(1) of the Act provides that the amount of compensation for partial disability shall be sixty-six and two thirds per cent of the difference between the claimant's average weekly wage at the time of the injury and the earning power of the claimant thereafter. Section 306(b)(2) sets forth the manner in which the earning power of the claimant shall be determined and provides in part as follows:

> (2) "Earning power" shall be determined by the work the employe is capable of performing and shall be based upon expert opinion evidence which includes job listings with agencies of the department, private job placement agencies and advertisements in the usual employment area. . . . In order to accu-

---

**4.** We also note that Claimant did not pursue a request for supersedeas or a stay with this court, as provided by Pa. R.A.P. 1781.

**5.** Our scope of review is limited to determining whether constitutional rights were violat-

ed, whether the adjudication is in accordance with the law or whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704.

rately assess the earning power of the employe, the insurer may require the employe to submit to an interview by a vocational expert who is selected by the insurer and who meets the minimum qualifications established by the department through regulation.

77 P.S. § 512(2).

Section 314(a) of the Act also relates to expert interviews of employees and states in pertinent part:

(a) At any time after an injury the employe, if so requested by his employer, must submit himself at some reasonable time and place for a physical examination or expert interview by an appropriate health care provider *or other expert,* who shall be selected and paid for by the employer. If the employe shall refuse upon the request of the employer, to submit to the examination or expert interview by the health care provider *or other expert selected by the employer,* a workers' compensation judge assigned by the department may, upon petition of the employer, order the employe to submit to such examination or expert interview at a time and place set by the workers' compensation judge and by the health care provider or other expert selected and paid for by the employer or by a health care provider or other expert designated by the workers' compensation judge and paid for by the employer. *The workers' compensation judge may at any time after such first examination or expert interview, upon petition of the employer, order the employe to submit himself to such further physical examination or expert interviews as the workers' compensation judge shall deem reasonable and necessary,* at such times and places and by such health care provider *or other expert* as the workers' compensation judge may designate; and in such case, the employer shall pay the

fees and expenses of the examining health care provider or *other expert,* and the reasonable traveling expenses and loss of wages incurred by the employe in order to submit himself to such examination or *expert interview.* The refusal or neglect, without reasonable cause or excuse, of the employe to submit himself to such examination or expert interview ordered by the workers' compensation judge, either before or after an agreement or award, shall deprive him of the right to compensation, under this article, during the continuance of such refusal or neglect, and the period for such neglect or refusal shall be deducted from the period during which compensation would otherwise be payable.

77 P.S. § 651(a) (emphasis added).

Claimant argues that the language of section 306(b)(2), requiring an employee to submit to "*an* interview" by an expert, specifically authorizes only one vocational interview by the insurer/employer. Claimant further asserts that section 314(a) makes no reference whatsoever to "vocational interviews"; Claimant argues that this section, by express words, only applies to physical examinations and *not* to vocational interviews.

Prior to the 1996 amendments to the Act, section 314(a) stated only that "the employe ... must submit himself for examination ... to a physician or physicians...." However, as amended, section 314(a) (emphasis added) now requires an employee to submit himself "for a physical examination or *expert interview* by an appropriate health care provider *or other expert* ...." Thus, by its plain language, section 314(a) does not apply only to physical examinations. Instead, the statute now specifically contemplates an interview by an expert other than a health care provider. In addition, section 314(a) (emphasis added) specifically authorizes "*further*

*physical examinations or expert interviews"* at any time after the first such examination or interview. Claimant's argument that section 314(a) deals only with medical examinations indicates that Claimant is unaware of, or has disregarded, the amendments to that provision.

Contrary to Claimant's assertions on appeal, the transferable skills of an employee based on his education, background and experience may indeed change over time. An injured worker could return to school and obtain a degree and/or additional skills that would make him or her more marketable in the workplace. Because there are no Bureau forms that claimants are required to submit to reflect a change in his or her education, training or skills, a subsequent vocational interview may be the only means by which an employer may obtain this updated information. Moreover, the form by which employers petition for an order to submit to an expert interview (form LIBC–499) (Petition for Physical Examination or Expert Interview of Employee (Section 314)) specifically requests the name and specialty of the *previous* expert who performed a physical examination or other expert interview. (R.R. at 184.)

■ Based on the plain language of sections 306(b) and 314(a) of the Act, as supported by Bureau regulations[6] and practices, we conclude that the Act and its regulations do permit multiple interviews by a vocational expert.

■ That conclusion does not end our analysis, however, because Claimant alter-natively argues that the mere passage of time, without more, does not support the WCJ's determination that Employer's request for a second vocational interview was reasonable and necessary in this case. Claimant asserts that the passage of time is irrelevant and that only factors such as employment experience, education, or change in skills or traits can establish a basis for a second interview. In support of this contention, Claimant notes that the Act is to be liberally construed in favor of the employee.

However, as previously indicated, a subsequent vocational interview pursuant to section 314(a) may be the only mechanism by which an employer can determine the existence and/or extent of a change in a claimant's vocational status. Therefore, it would not be reasonable to require an employer to have to allege such a change in order to request a subsequent interview.[7] Claimant complains that if the mere passage of time is grounds to compel such an interview, an employer would be able to compel numerous expert examinations, resulting in considerable disadvantage to a claimant. However, as the WCAB correctly observed, section 314(a) protects claimants from potential harassment by expressly providing that a subsequent interview must be deemed reasonable and necessary by a WCJ.

■ We are aware of no case law setting forth the standard of review of a WCJ's determination concerning the reasonableness or necessity of an "expert interview" pursuant to section 314(a). How-

---

**6.** 34 Pa.Code § 123.201—203. See also 34 Pa.Code § 123.302, which states that an insurer may demonstrate an employee's earning power by providing expert opinion evidence concerning the employee's capacity to perform a job. The regulation further states that the expert opinion evidence "shall include job listings with agencies of the Department, pri-vate job placement agencies and advertisements in the usual employment area within this Commonwealth," indicating that the "expert" offering such evidence is a vocational expert. 34 Pa.Code § 123.302.

**7.** Form LIBC–499 does not require the employer to state any reason for the request.

ever, it is well-settled that a determination concerning the grant or denial of an employer's request to compel a *physical* examination pursuant to section 314(a) is within the sound discretion of the WCJ, and our court will not interfere with that decision absent an abuse of discretion. *Pancoast v. Workers' Compensation Appeal Board (City of Philadelphia)*, 734 A.2d 52 (Pa.Cmwlth.1999).[8] Because this matter also arises under section 314(a), we conclude that the same standard should be applied to determinations concerning petitions to compel other expert interviews.

██ Here, Employer's July 16, 2004, request was made three years after the first expert interview and eighteen months after the denial of Employer's modification petition, and the request was preceded by an IME in May 2004. Under these circumstances, we conclude that the WCJ did not abuse his discretion in granting Employer's petition and ordering Claimant to submit to a second vocational interview.

Accordingly, we affirm.

### ORDER

AND NOW, this 28th day of March, 2006, the order of the Workers' Compensation Appeal Board, dated August 29, 2005, is hereby affirmed.

---

8. We note that the court in *Pancoast* described the standard as review for a "manifest abuse of discretion." *Id.* at 53 n. 2. However, in *Jacobs v. Halloran*, 551 Pa. 350, 710 A.2d 1098 (1998), our supreme court stated that the term "manifest" in "manifest abuse of discretion" has no legal significance and is therefore unnecessary to describe the applicable standard.