**Paul LINTON, Petitioner**

v.

**WORKERS' COMPENSATION APPEAL BOARD (AMCAST INDUSTRIAL CORPORATION), Respondent.**

Commonwealth Court of Pennsylvania.

Argued Nov. 10, 2009.

Decided Feb. 26, 2010.

Alan B. Ziegler, Reading, for petitioner.

Zachary M. Rubinich, Philadelphia, for respondent.

BEFORE: LEAVITT, Judge, and KELLEY, Senior Judge, and FLAHERTY, Senior Judge.

## OPINION BY Judge LEAVITT.

Paul Linton (Claimant) petitions for review of an adjudication of the Workers' Compensation Appeal Board (Board) that denied his request for attorneys' fees incurred in defending the modification petition filed by his employer, Amcast Industrial Corporation (Employer). Claimant asserts that Employer's modification petition, which was its second, was barred by the doctrine of *res judicata* or collateral estoppel and, as such, unreasonable as a matter of law. Discerning no merit to this contention, we affirm the Board.

This case began when Claimant tripped and fell to the ground at Employer's work site in 1998. Employer accepted liability for Claimant's work-related injury to his left shoulder, and Claimant began receiving temporary total disability benefits as of April 27, 1998. On March 15, 2001, at the request of Employer, Claimant participated in a vocational interview. Based on the interview, Employer filed a modification petition, but it was denied by WCJ Brian J. Eader who found that Employer failed to prove that Claimant was capable of doing the jobs identified by Employer's vocational expert. Employer did not appeal.

On May 21, 2004, after Employer's modification request was denied, John Perry, M.D., an orthopedic surgeon, conducted an independent medical examination (IME) of Claimant. After obtaining the results of Dr. Perry's IME, Employer requested that Claimant participate in a second vocational interview. Claimant refused to do so, arguing that Employer's second modification petition was precluded by *res judicata* or collateral estoppel. Claimant's refusal came before the Court in *Linton v. Workers' Compensation Appeal Board (Amcast Industrial Corporation)*, 895 A.2d 677 (Pa.Cmwlth.2006) (*Linton I*). The principle established in *Linton I* is that successive vocational interviews over the course of a claimant's receipt of workers' compensation are permitted under Section 306(b)(2) of the Workers' Compensation Act (Act).[1] Accordingly, in *Linton I*, we ordered Claimant to undergo a second vocational interview. This appeal concerns events that followed Claimant's second vocational interview.[2]

Based upon the results of Claimant's second vocational interview, Employer filed a second modification petition, alleging that Claimant had an earning capacity of $342.71 per week and that as of July 28, 2006, work was generally available to Claimant within his physical restrictions. Claimant filed an answer denying Employ-

1. Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 512(2). Section 306(b)(2) of the Act provides, in relevant part, that "[i]n order to accurately assess the earning power of the employe, the insurer may require the employe to submit to an interview by a vocational expert who is selected by the insurer and who meets the minimum qualifications established by the department through regulation." 77 P.S. § 512(2).

2. The parties also came before this Court again in *Linton v. Workers' Compensation Appeal Board (Amcast Industrial Corporation)* (Pa.Cmwlth., No. 1707 C.D. 2007, filed March 26, 2008). In that case, the Board affirmed the suspension of Claimant's benefits based on his initial refusal to submit to the vocational interview after being ordered to do so by WCJ Puhala. The Board also held that Employer's overpayment of benefits would be credited against future compensation payable to Claimant. This Court affirmed the order of the Board.

er's allegations and seeking penalties based upon Employer's alleged failure to provide timely discovery. The petitions were consolidated for hearing before WCJ Peter E. Perry.

At the hearing, Employer presented the deposition testimony of John W. Dieckman, a rehabilitation counselor and disability management specialist. He noted that Claimant had a permanent work-related injury; did not attend school after the fifth grade; and had not earned a general educational development diploma. Following testing, Dieckman determined that Claimant's math and spelling skills were at a first-grade level; that his reading ability was limited; and that Claimant had no computer skills.

Dieckman reviewed job listings posted by a state agency, a private placement agency and by other employers in a local newspaper. He found six jobs that he believed to fall within Claimant's educational and physical restrictions: (1) housekeeper/room attendant at a hotel; (2) housekeeper at a different hotel; (3) sandwich and pizza maker at a restaurant; (4) sandwich maker at a different restaurant; (5) car wash attendant; and (6) traffic flagman. Reproduced Record at 307 (R.R. __). Dieckman testified that none of these jobs had any educational prerequisites.

Employer also submitted the deposition testimony of its independent medical examiner, Dr. Perry, who determined at his 2004 IME that Claimant had a functional impairment and had reached maximum medical improvement. Dr. Perry released Claimant to return to work, with restrictions. He limited Claimant to lifting no more than 25 pounds; prohibited him from crawling; and permitted him to reach with his left arm only occasionally. Dr. Perry did not place any limitations on Claimant as to sitting, standing, walking or driving. Dr. Perry reviewed the six jobs identified by Dieckman and opined that Claimant was medically capable of performing all of them.

Claimant presented the deposition testimony of Richard I. Zamarin, M.D., an orthopedic surgeon. Dr. Zamarin had treated Claimant following his injury and performed surgery on Claimant's left shoulder in 1998. He re-examined Claimant in 2006, and determined that Claimant suffered chronic left shoulder pain due to his work injury. Dr. Zamarin agreed with Dr. Perry that Claimant had reached maximum medical improvement and was able to return to work, with restrictions.

Dr. Zamarin added to the physical restrictions identified by Dr. Perry. Dr. Zamarin did not believe that Claimant could do repetitive pushing or pulling with his left arm and that Claimant should not reach above shoulder level with his left arm. As such, Dr. Zamarin concluded that Claimant was unable to perform any of the jobs identified by Dieckman, with the possible exception of flagman. Dr. Zamarin stated that he would approve Claimant for that position as long as Claimant did not use his left arm more than one-third of the time and did not raise the flag above his left shoulder more than one percent of the time.

Also testifying for Claimant was Mark Lukas, Ed.D, a rehabilitation counselor. Dr. Lukas opined that Claimant was basically unemployable due to his limited education, limited dexterity and advanced age.[3] Dr. Lukas was unable to determine if Claimant was able to work as a flagman because that job was listed through a temporary agency and involved assignments to different locations. Without knowing the location of the assignments, Dr. Lukas

3. Claimant was born in 1945.

could not determine whether Claimant would be able to find transportation. Dr. Lukas concluded that the other five jobs identified by Dieckman did not fall within Claimant's educational and functional limitations.

Claimant testified on his own behalf. He claimed that he continues to experience constant pain in his left shoulder, which is not relieved by the over-the-counter medicine he takes. Claimant testified that he can lift his left arm to shoulder level, but doing so causes increased pain. Claimant opined that he is unable to lift more than ten pounds with his left hand. Claimant stated that he applied for a number of jobs, but he has not been successful in finding employment within his medical restrictions.

Finally, Claimant argued that Employer's contest was unreasonable because its second modification petition was barred by the doctrine of *res judicata* or collateral estoppel. Claimant sought $11,910 in attorneys' fees for unreasonable contest.

The WCJ credited all of Claimant's witnesses. He found that of the jobs identified by Employer, the only one available to Claimant was flagman. However, Employer's evidence did not establish the specific job duties of a flagman, and so the WCJ inferred that it was unlikely that the job could be performed with only one hand. In any case, the WCJ inferred that the flagman position was temporary in nature. Based upon the foregoing findings, the WCJ denied Employer's second modification petition.

Regarding Claimant's request for counsel fees, the WCJ rejected the argument that Employer's modification petition was barred by collateral estoppel or *res judicata.* However, the WCJ held that Employer's contest was unreasonable "based upon the weight of the evidence." WCJ Opinion at 7. The WCJ found Claimant's condition

did not improve after the first modification proceeding; his prognosis remained poor; and he continued to have serious physical limitations. Accordingly, the WCJ awarded Claimant $11,910 in counsel fees for Employer's unreasonable contest. The WCJ dismissed Claimant's penalty petition, finding that Claimant did not establish that Employer violated the Act by failing to provide timely discovery.

Both parties appealed to the Board. Employer argued that the WCJ erred in denying its request to modify benefits and in finding that its contest was unreasonable. Claimant argued that the WCJ erred by dismissing his penalty petition. On Employer's motion, the Board quashed Claimant's appeal of the denial of his penalty petition.

■ The Board affirmed the WCJ's determination that Employer had not met its burden of proof as to the modification petition. However, the Board reversed the award of attorneys' fees for unreasonable contest. First, the Board rejected Claimant's *res judicata* or collateral estoppel argument. It did so because Employer's first modification petition in 2001 was based on a different period of time; the second petition was based upon findings of a different vocational expert; and the two petitions involved different identifiable job positions. Second, the Board found that Employer had presented competent evidence that Claimant was able to work and that jobs were available within his medical restrictions. The WCJ's findings that Claimant's physical condition had not improved was not dispositive of his ability to work. Even Claimant's physician agreed that Claimant could work. Accordingly, Employer's competent evidence established a reasonable basis for contesting its continuing liability for benefits. Claimant

now petitions for this Court's review.[4]

Claimant raises two issues on appeal. First, Claimant argues that Employer's contest was unreasonable as a matter of law because its modification petition was barred by the doctrines of *res judicata* or collateral estoppel. Second, Claimant claims that Employer's contest was unreasonable as a matter of law because the merits of its second modification petition had been adjudicated in the first modification proceeding.

■ The principles of *res judicata* and collateral estoppel bar the relitigation of claims and issues that have previously been decided. *Temple University v. Workers' Compensation Appeal Board (Parson and Supersedeas Fund)*, 753 A.2d 289, 291 (Pa.Cmwlth.2000). *Res Judicata*, or claim preclusion, prevents a future suit between the same parties on the same cause of action after final judgment is entered on the merits of the action. *PMA Insurance Group v. Workmen's Compensation Appeal Board (Kelley)*, 665 A.2d 538, 541 (Pa.Cmwlth.1995). Collateral estoppel, also known as issue preclusion, prevents relitigation of an issue of law or fact between the same parties upon a different claim or demand. *Fiore v. Department of Environmental Resources*, 96 Pa.Cmwlth. 477, 508 A.2d 371, 374 (1986).

■ As this Court has explained, it is often difficult to distinguish between *res judicata* and collateral estoppel. *Fiore*, 508 A.2d at 375. Either doctrine forecloses relitigation of an issue of fact or law which was actually litigated and which was necessary to the original judgment. *Hebden v. Workmen's Compensation Appeal Board (Bethenergy Mines, Inc.)* 534 Pa.

327, 330, 632 A.2d 1302, 1304 (1993). Therefore, the court must consider whether the ultimate and controlling issues presented in a proceeding have been decided in a prior proceeding in which the parties actually had an opportunity to appear and assert their rights. *Fiore*, 508 A.2d at 375.

■■ Section 413(a) of the Act expressly provides that a claimant's benefits may be modified "upon proof that the disability of an injured employe has increased, decreased, recurred, or has temporarily or finally ceased, or that the status of any dependent has changed." 77 P.S. § 772. "Disability" is defined as a loss of earning power. *City of Philadelphia v. Workers' Compensation Appeal Board (Szparagowski)*, 574 Pa. 372, 387, 831 A.2d 577, 585 (2003). Thus, an employer may file a modification petition whenever an injured employee's loss of earning power has changed. *Id.* A change in the loss of earning power is not limited to a change in a claimant's physical condition. "[A] modification or suspension petition may also be based upon the discovery of a position that the claimant can perform, even in the absence of a change in medical condition." *Id.*, 574 Pa. at 387 n. 6, 831 A.2d at 586 n. 6.

■ In *Linton I*, this Court established that successive interviews by a vocational expert are permitted under the Act, because, *inter alia*, the skills of an employee may change over time should the injured worker return to school and obtain an additional degree or skill that would make him more marketable in the workplace. *Linton I*, 895 A.2d at 682. Moreover, a vocational interview is the only mechanism by which an employer can determine a change to a claimant's vocational status

---

4. Our scope of review is limited to determining whether there has been a violation of constitutional rights, an error of law or whether necessary findings of fact are supported by substantial evidence of record. *Tri–Union Express v. Workers' Compensation Appeal Board (Hickle)*, 703 A.2d 558, 561 (Pa. Cmwlth.1997).

because a claimant is not required to report any changes in his education or job skills to the Bureau. *Id.* Where a vocational interview reveals that a claimant's vocational or medical status has changed, or where the employment market has changed, the employer may file a second petition for modification supported by the information acquired during a new interview. *Id.*

With the foregoing principles in mind, we turn to Claimant's first assignment of error, *i.e.*, that Employer's modification petition was barred by the doctrine of *res judicata* or collateral estoppel. Under *Linton I*, neither doctrine has application should Employer's second modification petition be based on the discovery of new employment opportunities within Claimant's abilities. We find this to be the case.

In Employer's first modification petition, WCJ Eader received testimony from Jennifer Roland, a vocational specialist. She interviewed Claimant and noted that he had worked as a foundry/utility worker from 1973 through 1998. Prior to that, he worked for five years on a farm. Claimant had attended school through the fifth grade. Roland found four jobs available within Claimant's physical limitations: (1) porter/lot attendant at an automobile dealership; (2) lot attendant at a different automobile dealership;[5] (3) housekeeper at a hotel; and (4) housekeeper at a different hotel.

WCJ Eader rejected Roland's testimony as not credible because she had only testified on behalf of insurance companies and, therefore, was not a neutral witness. He also found Roland's vocational study to be flawed because it was based upon job advertisements in only one newspaper. Nevertheless, WCJ Eader went on to reject jobs identified by Roland on substantive grounds.

With respect to the porter/lot attendant positions, WCJ Eader noted that Roland had not determined whether or not Claimant's driving history would have disqualified him from the job. He did not believe that Claimant's skills as a foundry worker or a farm worker were transferable to the job of a porter/lot attendant. WCJ Eader rejected the housekeeping positions because Claimant's job experience did not qualify him for these jobs and because Roland did not know if the job could be done using, primarily, one arm.

In its second modification petition, Employer identified six jobs that it alleged were appropriate for Claimant: two housekeeper positions, two sandwich maker positions, one car wash attendant position and one flagman position. Employer's rehabilitation counselor testified that these jobs were available and that the jobs were appropriate for Claimant. Employer's medical expert testified that Claimant was medically capable of performing all six jobs.

Notably, Employer identified a housekeeping position as an available job in both modification petition proceedings. Because Employer did not offer evidence that the housekeeping job could be done using primarily one arm, arguably the issue of Claimant's ability to perform the housekeeping position had been previously decided. However, this was only one of six jobs identified in Employer's second modification petition. Accordingly, we disagree with Claimant's argument that the entire petition was barred by either *res judicata* or collateral estoppel. Thus, WCJ Perry

---

5. Both of the lot attendant jobs involved parking cars, shuttling customers and verifying receipt of cars delivered.

properly considered whether Claimant was capable of working as a sandwich maker, a car wash attendant, or a flagman, as those issues were not raised before WCJ Eader.

In Claimant's second issue, he argues that Employer's contest was unreasonable as a matter of law because all issues raised in Employer's second modification proceeding were resolved in the first modification proceeding. Accordingly, Claimant posits that there were no genuinely disputed issues raised in Employer's second modification petition, rendering its contest unreasonable as a matter of law.

■ "A contest is reasonable when it is undertaken to resolve a genuinely disputed issue, rather than to harass the claimant." *Lebanon Valley Brethren Home v. Workers' Compensation Appeal Board (Flammer)*, 948 A.2d 185, 188 (Pa.Cmwlth.2008). Employer presented new employment opportunities that had become available for Claimant and expert testimony that those jobs were within Claimant's vocational and physical abilities. Had Employer's evidence been credited, Claimant's benefits would have been modified. Stated otherwise, the issues in Employer's second modification were not resolved in the first proceeding. Indeed, Claimant's second issue just restates his *res judicata* and collateral estoppel argument and, accordingly, lacks merit.

For all of the foregoing reasons, the order of the Board is affirmed.

### *ORDER*

AND NOW, this 26th day of February, 2010, the order of the Workers' Compensation Appeal Board dated December 30, 2008, is hereby AFFIRMED.