## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Rogele, Inc.,                                   :
                    Petitioner      :
                                    :
               v.                        :
                                    :
Workers' Compensation Appeal Board  :
(Hall),                                         :   No. 595 C.D. 2018
                 Respondent   :   Submitted: August 24, 2018


BEFORE:   HONORABLE ANNE E. COVEY, Judge
                HONORABLE MICHAEL H. WOJCIK, Judge
                HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION BY
JUDGE COVEY                                  FILED: November 30, 2018

Rogele, Inc. (Employer) petitions this Court for review of the Workers' Compensation (WC) Appeal Board's (Board) March 28, 2018 order affirming the portion of the Workers' Compensation Judge's (WCJ) decision granting John V. Hall's (Claimant) Petition to Review Medical Treatment and/or Billing (Review Medical Petition). Employer presents two issues for this Court's review: (1) whether the WCJ and the Board lacked jurisdiction and were barred from ordering Employer to pay for Claimant's medical treatment that controlling decisions had declared were not reasonable and necessary; and (2) whether the WCJ and the Board erred by ordering Employer to pay for Claimant's intrathecal pump replacement and its refills.[1] After review, we affirm.

---

[1]       [An] intrathecal pump is a moderate-sized implantable device that is able to deliver small doses of medication directly to the spinal fluid. The pump consists of a small battery-powered, programmable pump that is implanted under the subcutaneous tissue of the abdomen and connected to a small catheter tunneled to the site of spinal entry.

Reproduced Record (R.R.) at 64a. Refills are required every 2½ to 3½ months. *See* R.R. at 125a-126a.

The facts of this case are not disputed. Claimant sustained a work-related injury on January 25, 1999, described as an L1 vertebrae fracture/L1 compression fracture, lumbosacral sprain/strain, and disk herniation/internal disk disruption at T12-L1, L1-L2 and L2-L3. On December 16, 2004, a WCJ approved a Compromise and Release of Claimant's wage loss claim, but Employer remained responsible for paying reasonable and necessary medical treatment that is causally related to Claimant's work injury.

Claimant's treating physiatrist/pain specialist Steven E. Morganstein, D.O. (Dr. Morganstein) was managing Claimant's pain with 80 mg of Oxycontin three times per day, six 350 mg tablets of Soma per day, 600 mcg of Actiq three times per day and an occasional Lidoderm patch. As a result of WCJ hearings on Employer's November 2008 petitions to review, petition to review medical treatment/billing and review medical petition, on February 22, 2010, WCJ Robert Vonada (WCJ Vonada), crediting in part testimony by both Dr. Morganstein and Employer's witness, treating physiatrist S. Ross Noble, M.D. (Dr. Noble), declared that Claimant's prescribed medications were reasonable and necessary, **but ordered that a random toxicology screen be conducted before each office visit**. Although recommendations had been made as far back as August 2005 for Claimant to be evaluated for an intrathecal pump, Claimant did not desire one at that time.

In November 2010, Vitaly Gordin, M.D. at Hershey Pain Center (Dr. Gordin) implanted an intrathecal pump in Claimant that dispensed narcotic pain medications. The pump required periodic monitoring and refills approximately every 2 months. In addition, Dr. Gordin prescribed Oxycodone 30 mg 1 to 2 tablets 2 to 3 times per day as needed. Because Dr. Gordin did not conduct complete drug screens before each visit as previously ordered, Employer denied payment for Claimant's prescription medications.

2

On November 19, 2012, Claimant filed a penalty petition due to Employer's failure to pay for his medications. On February 28, 2013, Claimant filed a petition to review utilization review determination. On May 31, 2013, Employer sought review of whether Claimant's medical treatment, including his prescription narcotic pain medication, was reasonable and necessary. The matters were consolidated. On May 29, 2014, WCJ Patrick Sheldon (WCJ Sheldon) denied the penalty petition based on Dr. Gordin's failure to drug test Claimant. WCJ Sheldon concluded based on the utilization reviewer's opinion that the additional Oxycodone was not reasonable and necessary "[i]n light of the prior implantation of the morphine pump," Reproduced Record (R.R.) at 36a, but found credible the utilization reviewer's conclusion "that the programming and refill of the intrathecal pain pump from October 11, 2012 and ongoing every two months was reasonable and necessary." R.R. at 33a. WCJ Sheldon ordered Employer to reimburse Claimant's litigation costs. Claimant appealed to the Board which, on June 11, 2015, affirmed WCJ Sheldon's decision, but modified the litigation cost award.

On February 18, 2016, Employer filed a petition to review WC benefits (Review Petition), seeking reimbursement from Claimant of the litigation costs the Board deemed not payable. Claimant denied the allegations, but stipulated to receiving the costs from Employer. On February 19, 2016, Claimant filed the Review Medical Petition, alleging that Employer had not paid medical expenses related to a 2015 pump replacement or the medication refills therefor. Employer denied the averments contained in the Review Medical Petition. Claimant also filed a Penalty Petition, wherein he alleged that Employer's failure to pay medical bills violated the WC Act (Act).[2] Employer denied the allegations asserted in the Penalty Petition.

---

[2] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1-1041.4, 2501-2708.

WCJ Vonada held hearings on March 16 and August 25, 2016. On January 19, 2017, WCJ Vonada granted Employer's Review Petition and ordered Claimant to reimburse Employer $1,654.50 for costs it overpaid under the prior Board order. WCJ Vonada also granted Claimant's Review Medical Petition, thereby requiring Employer to reimburse Claimant for expenses related to the replacement pump and its refills. WCJ Vonada denied Claimant's Penalty Petition. Claimant appealed from WCJ Vonada's grant of the Review Petition, and Employer appealed from WCJ Vonada's grant of the Review Medical Petition. On March 28, 2018, the Board affirmed WCJ Vonada's determination that Employer is responsible for expenses related to the replacement pump and refills, and modified WCJ Vonada's cost award to $203.69. Employer appealed to this Court.[3]

Employer argues that WCJ Vonada and the Board lacked subject matter jurisdiction and were barred from ordering Employer to pay for treatments that controlling decisions had declared were not reasonable and necessary. Employer also contends that there was no utilization review request before WCJ Vonada, and his February 22, 2010 decision created a "necessary condition precedent" that Dr. Gordin's treatment "is not reasonable and necessary on an ongoing basis unless a drug screen is performed before each office appointment," Employer Br. at 17. Employer specifically asserts:

> As the drug screening requirement concerns only the reasonableness and necessity of Claimant's medical treatment, and has remained binding upon the parties as the result of prior Utilization Review determinations and resulting litigation, WCJ Vonada lacked subject matter jurisdiction to determine whether Claimant's circumstances

---

[3] "On review[,] this Court must determine whether constitutional rights were violated, errors of law were committed, or necessary findings of fact were supported by substantial competent evidence." *Stepp v. Workers' Comp. Appeal Bd. (FairPoint Commc'ns, Inc.)*, 99 A.3d 598, 601 n.6 (Pa. Cmwlth. 2014). "Substantial evidence has been defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*

4

have changed such that Dr. Gordin's medical treatment is now reasonable and necessary without the requisite drug screens. Moreover, Claimant was precluded by the doctrine of *res judicata* from relitigating this issue.

Employer Br. at 17-18.

"It is accepted that, pursuant to [Section 301(c) of] the [Act], an employer is only liable to pay for a claimant's medical expenses that arise from and are caused by a work-related injury. 77 P.S. § 411(1)[.]" *Kurtz v. Workers' Comp. Appeal Bd. (Waynesburg Coll.)*, 794 A.2d 443, 447 (Pa. Cmwlth. 2002) (footnote omitted). Although the burden is initially on the claimant to establish that the injury is work-related, once the employer acknowledges liability for the injury, "the claimant is not required to continually establish that medical treatment of that compensable injury is causally related because the injury for which the claimant is treating has already been established." *Id.* Accordingly, thereafter, the employer has the burden of proving that a medical expense is unreasonable, unnecessary, or is not related to the accepted work injury. *See id.*

"[T]his Court has recognized that the issue of causation is separate and distinct from the reasonableness and necessity of medical treatment." *J.D. Landscaping v. Workers' Comp. Appeal Bd. (Heffernan)*, 31 A.3d 1247, 1253 (Pa. Cmwlth. 2011).

> Th[is] Court explained in *Bloom* [*v. Workmen's Compensation Appeal Board (Keystone Pretzel Bakery)*, 677 A.2d 1314 (Pa. Cmwlth. 1996)], that a petition to review medical treatment relates to the issue of the causal connection between medical treatment and the work injury, but utilization review relates to the reasonableness of and necessity for medical treatment. A challenge to particular medical treatment as not being causally related to a work injury, . . . must be filed directly with a WCJ. A challenge to particular treatment as being not reasonable or necessary must be pursued through the administrative utilization review procedures. *Id.*

*Mercy Douglas Corp. v. Workers' Comp. Appeal Bd. (Davis)*, 713 A.2d 722, 725 (Pa. Cmwlth. 1998).

By November 2005, May 2006 and January 2007 utilization reviews, Claimant's treatment with the prescribed pain medications was ruled reasonable and necessary. *See* R.R. at 49a-53a. Relative to Employer's appeal from the last utilization review, WCJ Vonada "accept[ed] the opinion of Dr. Morganstein and the [u]tilization reviewers that [Claimant's] treatment regimen is reasonable and necessary." R.R. at 53a. Dr. Noble expressed that regular checks are necessary to ensure that a patient's metabolites are consistent with prescribed medications, and to confirm that the patient is using medications as prescribed.[4] Dr. Morganstein testified that Claimant had signed a narcotics contract on September 22, 2005, giving Dr. Morganstein the right to ask for random urine and toxicology screens and pill counts. *See* R.R. at 52a. Dr. Morganstein agreed that, although he never ordered any such tests because he was never concerned that Claimant was diverting his medications, Claimant should be more closely monitored. *See* R.R. at 52a.

On February 22, 2010, WCJ Vonada concluded: "[Employer] has met its burden in this matter to establish by sufficient, competent, credible evidence that **regular toxicology testing which verifies [Claimant] is taking all medicine which is prescribed is integral to a finding that the medicine prescribed is reasonable and necessary**." WCJ February 22, 2010 Op. at 5 (R.R. at 53a) (emphasis added). Accordingly, WCJ Vonada ordered: "Claimant's treating physician must order a random toxicology screen before each of [Claimant's] office visits **to demonstrate**

---

[4] Notably, the record evidence reflects a 2008 report by Claimant that his medications were stolen from his vehicle. *See* R.R. at 52a. Also, in the February 6, 2013 utilization review report related to Claimant's pump, the reviewer stated: "The records reflect indications of lost prescriptions on several occasions. On [October 28, 2011], [a] phone message indicate[s] a 'last chance' after [Claimant] reportedly complained that the pharmacy lost his prescriptions." R.R. at 62a.

[**Claimant**] **is using all of his medications as prescribed** and allow [his physician] to adjust [Claimant's] prescriptions to dispense what [Claimant] needs." WCJ February 22, 2010 Dec. at 6 (R.R. at 54a) (emphasis added).

Further, in December 2012, Employer sought utilization review of the reasonableness and necessity of Claimant's pain management prescribed by Dr. Gordin from October 11, 2012 and ongoing. On February 6, 2013, utilization reviewer Nathan Schwartz, M.D. (Dr. Schwartz) concluded: "[**P**]**rogramming and refill of** [**Claimant's**] **implantable intrathecal pump delivering hydromorphone (opiate) and bupivacaine (local anesthetic) from** [**October 11, 2012**] **and ongoing once every two months** . . . **is reasonable and necessary.**" R.R. at 64a (emphasis added). On May 31, 2013, Employer filed a petition to review medical treatment. On May 29, 2014, WCJ Sheldon found Dr. Schwartz's conclusion credible, declared that the medications administered through the pump were reasonable and necessary, but granted Employer's petition in part, stating that oral Oxycodone administered outside the pump was excessive and not reasonable and necessary.[5] *See* WCJ May 29, 2014 Dec. at 7 (R.R. at 36a). At the August 25, 2016 WCJ hearing, Claimant testified that he receives all of his work-related pain medication through the pump. Employer refused to pay for the pump's replacement and refills because Claimant's physicians were not conducting toxicology screens at each office visit as previously ordered.

It is clear from the record evidence that Claimant's pump and his attendant medications have been ruled reasonable and necessary and that their use is causally related to Claimant's work injury. Accordingly, Employer's argument that WCJ Vonada and the Board lacked subject matter jurisdiction and were barred from

---

[5] WCJ Sheldon acknowledged, however, that "[a] different 'cocktail regime' in conjunction with the [] pump could potentially be reasonable and necessary." WCJ May 29, 2014 Dec. at 7 (R.R. at 36a).

7

ordering Employer to pay for Claimant's pump and medication refills is without merit.[6]

Moreover, nothing in the record suggests that toxicology screening is a condition precedent to Claimant's pump use. Rather, the toxicology screenings were a condition precedent only when Claimant controlled his medications, to insure that he was taking them as prescribed. WCJ Vonada's February 22, 2010 decision sustained the utilization reviewer's determination that Claimant's oral narcotic medications were reasonable and necessary. WCJ Sheldon's May 29, 2014 decision upheld the utilization reviewer's opinion that medications administered through Claimant's pump were reasonable and necessary, and the additional oral medications prescribed for breakthough pain (*e.g.*, short-acting oral narcotic medications for periodic pain exacerbations used because the pump cannot account for exacerbations) were not reasonable and necessary in conjunction with the pump. WCJ Sheldon acknowledged therein that WCJ Vonada's order mandating toxicology screenings was binding, but the screenings were limited to when oral narcotics are prescribed outside the pump. Once the pump was implanted and Claimant's physicians

---

[6] "*Res Judicata,* or claim preclusion, prevents a future suit between the same parties on the same cause of action after final judgment is entered on the merits of the action." *Linton v. Workers' Comp. Appeal Bd. (Amcast Indus. Corp.)*, 991 A.2d 376, 381 (Pa. Cmwlth. 2010).

> Technical res judicata applies when the following four factors all are present: (1) identity of the thing sued upon or for; (2) identity of the cause of action; (3) identity of the persons and parties to the action; and (4) identity of the quality or capacity of the parties suing or sued. . . . Generally, causes of action are identical when the subject matter and the ultimate issues are the same in both the old and the new proceedings.

*Henion v. Workers' Comp. Appeal Bd. (Firpo & Sons, Inc.)*, 776 A.2d 362, 365-66 (Pa. Cmwlth. 2001) (citations omitted). Here, the thing sued upon differs from the questions the WCJs previously had before them. The issue before WCJ Vonada in this instance is whether Employer is responsible for paying for the replacement pump and its attendant refills which had not been previously litigated.

8

completely controlled all of his medications, the purpose for ordering toxicology screenings no longer existed. Since the reasonableness and necessity of the medications delivered through the pump has been established, WCJ Vonada properly declared:

> Claimant has met his burden to establish by sufficient, competent, credible evidence in this matter that properly payable medical expenses are unpaid. At the time Dr. Noble recommended drug testing prior to an appointment when narcotics were refilled, [] Claimant was taking several types of narcotic medications. Presently, [] **Claimant is receiving medication only through the intrathecal pain pump. The amount of medication in the pump is monitored by Dr. Gordin and there can be no use that Dr. Gordin is not aware of. So long as [] Claimant is not receiving oral or topical narcotic prescriptions, the requirement for toxicology screens before each office visit is immaterial.** Accordingly, refills should be reimbursed by [Employer].

WCJ January 19, 2017 Dec. at 5 (R.R. at 143a) (emphasis added). Accordingly, the issue remaining before the Court is whether Employer is responsible for the cost of Claimant's replacement pump and its refills.

Employer contends that the WCJ and the Board erred by ordering Employer to pay for a replacement pump and its refills when evidence established that a home incident, rather than wear and tear, prematurely rendered the pump inoperable.

Section 306(f.1)(1)(i) of the Act specifies, in pertinent part, that "[t]he employer shall provide payment . . . for reasonable surgical and medical services, services rendered by physicians . . . , including . . . medicines and supplies, as and when needed." 77 P.S. § 531(1)(i). Section 306 (f.1)(1)(ii) of the Act further states, in relevant part: "In addition to the above service, the employer shall provide payment for medicines and supplies, hospital treatment, services and supplies and

9

orthopedic appliances, and prostheses in accordance with this section." 77 P.S. § 531(1)(ii). Employers must also pay for replacements necessary because of normal wear and tear or obsolescence. *See Zuback v. Workers' Comp. Appeal Bd. (Paradise Valley Enter. Lumber Co.)*, 892 A.2d 41 (Pa. Cmwlth. 2006); *see also Bowlaway Lanes v. Workers' Comp. Appeal Bd. (Caparosa)*, 496 A.2d 99 (Pa. Cmwlth. 1985).

Here, Employer's evidence that the pump's replacement was necessary because of a non-work-related intervening incident consisted of the following records:

- Dr. Gordin's February 5, 2015 report:

  [Claimant] called my office . . . stating that he was working on his house the day before the phone call in the evening and sustained an electrical shock, after which he started noticing that his pain pump was alarming every 30 minutes. . . . The pump was interrogated and it was discovered that the pump was in a stall mode and it has been since the accident last night and its function was never recovered. We contacted the technical support of Medtronic, [which] indicated that the pump [was] not salvageable and need[ed] to be replaced. We interrogated the pump and programmed it to be stopped, which means that the pump's function cannot be restored.

  R.R. at 75a.

- James McInernery, M.D.'s February 9, 2015

  Neurosurgery Clinic report: [Claimant] . . . who has a long history of intrathecal Dilaudid and bupivacaine pump [that was working well], but he was shocked recently by electricity and after that his pump was stalled and not functioning well and so we recommended bringing him to the operating room [to] revise the pump.

  R.R. at 73a.

10

- Claimant's agreement in the parties' Stipulation of Undisputed Facts that "[a] number of medical bills have also resulted from Claimant's need to have a morphine pump re-implanted on or about February 9, 2015 after Claimant was shocked at home." R.R. at 56a.

*See* Employer Br. at 33-35. Employer argues that Claimant has the burden of proof in this case, but further maintains that, "regardless of which party bore the burden of proof on this issue, substantial evidence established the Claimant's need for a replacement pump was due to a non-work-related incident at home, not the work injury[] resulting in medical treatment, normal wear and tear or obsolescence." Employer Br. at 35.

At the August 25, 2016 WCJ hearing, Claimant explained that he obtained the replacement pump because when he underwent numerous MRIs for his back pain "the pump would just go completely crazy with alarms and just beep," which necessitated visits to Dr. Gordin to be sure the pump continued to work properly. R.R. at 124a-125a. He further described that he experienced a series of 4 or 5 small shocks (*i.e.*, like "getting hit on the end of the finger") while assisting electricians working on his house at the end of 2014. R.R. at 128a. He declared that the shocks did not make the alarm sound, and they did not require him to seek medical treatment. However, Claimant stated that the pump completely failed on February 5, 2015 because it was at the end of its life expectancy, causing the alarm to sound and Claimant began to suffer from narcotics withdrawal. *See* R.R. at 129a-130a. Claimant returned to Dr. Gordin to evaluate the pump's function. According to Dr. Gordin's February 5, 2015 outpatient report, Dr. Gordin "contacted the technical support of [pump manufacturer] Medtronic, [which] indicated that the pump [was] not salvageable and need[ed] to be replaced." R.R. at 75a. The pump was replaced on February 9, 2015, and Claimant has not experienced any further problems.

11

The law is well-settled that "[t]he WCJ has exclusive authority to act as fact finder, determine credibility of witnesses, and weigh the evidence. The WCJ's findings will not be disturbed if they are supported by substantial, competent evidence." *Stepp v. Workers' Comp. Appeal Bd. (FairPoint Commc'ns, Inc.)*, 99 A.3d 598, 601 n.6 (Pa. Cmwlth. 2014) (citation omitted).

> 'Moreover, we are to draw all reasonable inferences which are deducible from the evidence in support of the factfinder's decision in favor of that prevailing party.' It does not matter if there is evidence in the record supporting findings contrary to those made by the WCJ; the pertinent inquiry is whether the evidence supports the WCJ's findings.

*3D Trucking Co., Inc., v. Workers' Comp. Appeal Bd. (Fine & Anthony Holdings Int'l)*, 921 A.2d 1281, 1288 (Pa. Cmwlth. 2007) (citation omitted) (quoting *Waldameer Park, Inc. v. Workers' Comp. Appeal Bd. (Morrison)*, 819 A.2d 164, 168 (Pa. Cmwlth. 2003)).

Accordingly, neither the Board nor the Court may reweigh the evidence or the WCJ's credibility determinations. *Sell v. Workers' Comp. Appeal Bd. (LNP Eng'g)*, 771 A.2d 1246 (Pa. 2001). Specifically, "Section 422(a) [of the Act, 77 P.S. § 834,] does not permit a party to challenge or second-guess the WCJ's reasons for credibility determinations. [Thus, u]nless made arbitrarily or capriciously, a WCJ's credibility determinations will be upheld on appeal."[7] *Pa. Uninsured Emp'rs Guar. Fund v. Workers' Comp. Appeal Bd. (Lyle)*, 91 A.3d 297, 303 (Pa. Cmwlth. 2014) (quoting *Dorsey v. Workers' Comp. Appeal Bd. (Crossing Constr. Co.)*, 893 A.2d 191, 195 (Pa. Cmwlth. 2006)). Finally, "borderline interpretations of the Act are to

---

[7] Capricious disregard "occurs only when the fact-finder deliberately ignores relevant, competent evidence." *Williams v. Workers' Comp. Appeal Bd. (USX Corp.-Fairless Works)*, 862 A.2d 137, 145 (Pa. Cmwlth. 2004). Capricious disregard, by definition, does not exist where, as here, the WCJ expressly considered and rejected the evidence. *Id.*

12

be construed in the injured party's favor." *Griffiths v. Workers' Comp. Appeal Bd. (Seven Stars Farm, Inc.)*, 943 A.2d 242, 255 (Pa. 2008).

Here, based on the record evidence, including Claimant's hearing testimony which WCJ Vonada found credible, WCJ Vonada concluded as to the Review Medical Petition:

> The medical records are clear that the pain pump began alarming every 30 minutes after [] Claimant sustained an electrical shock. However, no physician offered an opinion that the electrical shock was the substantial contributing factor in comparison to exposure to an MRI machine or some other cause. Furthermore, the occasions when [] Claimant was shocked were accidental. The intrathecal pain pump was found to be reasonable and necessary treatment and recommended by several physicians who reviewed [] Claimant's case to control his pain. [Employer] should be responsible for the costs of its replacement. Accordingly, the cost of replacement of the intrathecal pump should be reimbursed by [Employer].

WCJ January 19, 2017 Dec. at 5 (R.R. at 143a). The Board affirmed the WCJ's decision, stating: "The WCJ . . . found that no physician offered an opinion that the electrical shock was the substantial contributing factor in the failure of the pump. The WCJ's finding is supported by the records, which . . . do not assign a cause to the failure of the pump." Board Dec. at 11.

Based upon this Court's review, drawing all reasonable inferences in Claimant's favor on the Review Medical Petition as we must, we hold that credible record evidence supports WCJ Vonada's conclusion that, but for Claimant's work injury he would not need the pump, and Claimant experienced issues with the pump before he was shocked in February 2015. Accordingly, the WCJ and the Board properly declared that Employer is obligated to reimburse Claimant for the replacement pump and its attendant refills.

13

Based on the foregoing, the Board's order is affirmed.

_____
ANNE E. COVEY, Judge

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Rogele, Inc.,              :
             Petitioner     :
                               :
          v.               :
                               :
Workers' Compensation Appeal Board  :
(Hall),                        :     No. 595 C.D. 2018
             Respondent   :

## O R D E R

AND NOW, this 30th day of November, 2018, the Workers' Compensation Appeal Board's March 28, 2018 order is affirmed.

_____
ANNE E. COVEY, Judge