IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Peter Oldfield,                              :
          Petitioner                   :
                                       :
   v.                                       :   No. 233 C.D. 2023
                                       :
Popcorn Alley, Inc. (Workers'                :
Compensation Appeal Board),                  :
          Respondent                   :   Submitted:  June 4, 2024

BEFORE:   HONORABLE ANNE E. COVEY, Judge
               HONORABLE MICHAEL H. WOJCIK, Judge (P.)
               HONORABLE ELLEN CEISLER, Judge

<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION
BY JUDGE CEISLER                              FILED:  July 2, 2024

Peter Oldfield (Claimant), *pro se*, petitions this Court for review of the January 4, 2023 order of the Workers' Compensation Appeal Board (Board), which granted a motion to quash filed by Popcorn Alley, Inc. (Employer), on the basis that Claimant's appeal to the Board was untimely filed.  Upon review, we affirm.

## I.  Background

On May 28, 2021, Claimant filed a claim petition alleging that he sustained a work injury to his right shoulder, neck, and back on March 10, 2021, while carrying boxes through a doorway equipped with plastic strip curtains.  According to Claimant, he was caught on one of the curtains, which caused his right side to become entrapped.  Claimant filed a second claim petition on June 8, 2021,

describing the same work injury and mechanism of injury.[1]  Employer denied the allegations and issued a Notice of Compensation Denial on April 9, 2021.

## A. Claimant's Evidence

Claimant testified before the WCJ on September 14, 2021, December 7, 2021, and April 5, 2022. Claimant worked part-time for Employer as a "packer" for approximately 10 months prior to the work injury.  Supplemental Reproduced Record (S.R.R.) at 22b.  Claimant advised that on March 10, 2021, he was carrying 2 boxes weighing 15 pounds each through a doorway when his right shoulder became caught on the plastic strip curtains.  Claimant felt a sharp pain in the back of his neck and right shoulder.  Initially, Claimant continued working; however, "after a while," Claimant felt nauseous and dizzy, with numbness on the right side of his face.  *Id.* at 30b.  At the time, Claimant believed he was having a stroke, as his symptoms were similar to those he experienced during a stroke he had a few years earlier.  Claimant notified his supervisor of his symptoms, and the incident that occurred when his shoulder caught on the plastic strip curtains.

Another employee drove Claimant to the emergency room (ER), where he was evaluated for a stroke and released several hours later.  Claimant returned to work the following week, without restrictions.  After a few hours performing his regular work duties, Claimant felt pain through his neck and shoulder, and numbness in his

---

[1] Claimant was represented by counsel at the time he filed the two claim petitions.  During an October 19, 2021 hearing before a workers' compensation judge (WCJ), an attorney representing Claimant's counsel advised the WCJ that, due to a breakdown in communications, Claimant's counsel did not believe she could represent Claimant to the best of her ability.  Claimant suggested that his counsel might be upset that Claimant "confront[ed] her" about being "attacked" during testimony before the WCJ, which resulted in posttraumatic stress disorder "from defamation of [Claimant's] character."  Certified Record (C.R.), Item No. 14.  Claimant also alluded to a dispute about masking requirements.  The WCJ granted counsel's request to withdraw following the October 19, 2021 hearing.  Claimant did not obtain new counsel.

face and right arm. Claimant's supervisor moved him to a different job putting lids on containers, which alleviated much of Claimant's pain. Claimant filled out an incident report for Employer and sought treatment for his residual symptoms with a panel physician, K. Nicholas Pantelidis, M.D. Claimant received physical therapy for "a couple months." *Id.* at 41b. He was discharged from Dr. Pantelidis' care on April 20, 2021. Claimant's then-counsel referred him to Michael A. Fishman, M.D., who recommended steroid injections. Claimant last treated with Dr. Fishman in July 2021.

Claimant agreed that his condition has improved, and he could return to work in a medium- or light-duty capacity. He intermittently feels "a dull pain" in the front of his right shoulder, depending on activity. *Id.* at 49b. Occasionally, Claimant experiences pain when turning his neck. Claimant acknowledged that he had preexisting right elbow tendonitis, and acromioclavicular neurosis and arthritis in his right shoulder. He received physical therapy for his right shoulder and the right side of his neck the week prior to the alleged work injury. Claimant agreed that he has an extensive history of injuries to his left side, including pinched nerves in his upper back. Claimant works occasionally as a private personal trainer. He has worked out at a gym approximately five times since he sustained the alleged work injury on March 10, 2021. Claimant volunteers on "close to every weekend" as an emergency medical responder escort for "large motorcycle rides" and funeral processions. *Id.* at 83b-84b. He agreed that his volunteer work could require that he render medical assistance, including cardiopulmonary resuscitation. Claimant indicated that he would not volunteer as an escort if he did not feel capable of rendering aid.

During cross-examination, Claimant agreed that he pled "no contest" to a charge of impersonating a public servant in 2013, and that he was convicted of the same offense in January 2020. *Id.* at 82b. Claimant asserted that the charges related to using the "wrong-colored lights" on his vehicle. *Id.* at 112b. Claimant did not recall telling ER personnel that, by the time he arrived on March 10, 2021, his symptoms had largely subsided and that he only felt minor right shoulder pain. Claimant also did not recall notifying ER personnel that his right-side facial numbness began when he arrived at work around 7:00 a.m. While Claimant initially agreed that his symptoms progressed throughout his shift, he later maintained that his symptoms did not start until after the incident with the plastic strip curtains. *Id.* at 108b. Claimant acknowledged that his discharge instructions from the ER recommended an evaluation for complex migraines.

Claimant initially denied bruising his right hip and injuring his right rotator cuff after falling on snow or ice in December 2020; however, he agreed that medical records from his physical therapist indicated that he received treatment for a bruised right hip and "stiff" right rotator cuff at that time. *Id.* at 105b. Claimant did not recall reporting a second fall on ice or snow to his physical therapist in February 2021, which resulted in bilateral neck and lower back pain. Claimant asserted that these symptoms were "very different" from those he experienced on March 10, 2021. *Id.* at 114b.

## B. Employer's Evidence

Employer presented the written report derived from an independent medical examination (IME) performed by John A. Kline, Jr., M.D. on November 9, 2021. Claimant presented at the IME with "some shoulder discomfort," which he rated a 3 out of 10. C.R., Item No. 33. Claimant denied any neck pain or numbness or

4

tingling, except when engaged in heavy activity or exertion. Dr. Kline's findings on physical examination were normal, and Dr. Kline found no evidence that Claimant suffered from any ongoing right shoulder sprain or strain. Claimant did not express pain when performing a variety of maneuvers. Dr. Kline noted that Claimant had a significant medical history of pain in the neck and lumbar region, as well as "borderline right median nerve entrapment" that was confirmed by electrodiagnostic studies in March 2017. *Id.* Dr. Kline related Claimant's complaints of numbness and tingling in his right upper extremity and the right side of his face to his preexisting medical conditions and not a work injury. Therefore, Dr. Kline opined that, to the extent Claimant suffered a work injury on March 10, 2021, Claimant had fully recovered from that injury, and he was capable of working full time, without restrictions.

Employer submitted an accident report prepared by Claimant's supervisor, which described the injury as a suspected stroke with "numbness in half of body[.]" C.R., Item No. 35. The mechanism of injury described in the accident report is "stacking boxes." *Id.* There is no mention of an incident involving plastic strip curtains. Employer also submitted photographs of the doorway and plastic strip curtains that caused the alleged March 10, 2021 work injury, and a training video depicting an employee walking through the rubberized strip curtains. Claimant objected to the video as "a joke" and "not even close to what happened[.]" S.R.R. at 132b, 158b. Claimant advised that he walked through the right side of the plastic strip curtains, while Employer's video demonstrated an employee walking through the middle of the doorway.

Dr. Kline authored a second report after reviewing Employer's training video of the plastic strip curtains that allegedly caused Claimant's work injury. Dr. Kline

opined that the curtains were unlikely to be a mechanism of injury, as described by Claimant. Thus, Dr. Kline was of the opinion that Claimant did not suffer a work injury on March 10, 2021.

The WCJ circulated a decision on August 10, 2022, denying and dismissing Claimant's claim petitions. Based on personal observations of Claimant's demeanor while testifying, the WCJ rejected his testimony as not credible. The WCJ found that Claimant was often evasive and he displayed hostility towards Employer during the investigation of Claimant's alleged work injury. Claimant's credibility was undermined by his denial of previous right shoulder injuries, and by his convictions for impersonating a public servant. The alleged mechanism of injury was inconsistent with photographs of the plastic strip curtains and Employer's video demonstrating that the curtains "bend and slide over the employee" walking through the doorway. C.R., Item No. 6. The WCJ found Dr. Kline to be credible and persuasive, as his opinions were supported by the history obtained at the IME, Dr. Kline's physical examination, and his review of Claimant's medical records. Dr. Kline's opinion that Claimant did not suffer a work injury was consistent with Employer's evidence and Claimant's longstanding history of similar complaints.

Based on Dr. Kline's opinions, the WCJ found that Claimant failed to establish that a causal connection existed between his work and ongoing symptoms. Thus, the WCJ found that Claimant did not sustain a work injury on March 10, 2021. The WCJ's decision advised Claimant that he must file an appeal "within 20 days from, but not including, the date of this notice."[2] *Id.*

---

[2] The WCJ's findings of fact reference a longstanding issue between Claimant and Employer regarding Claimant's right to bring his service dog, Vinnie, to work. Although the WCJ **(Footnote continued on next page…)**

6

Claimant filed his appeal with the Board on August 31, 2022, 21 days after the WCJ circulated his decision. Employer filed a Motion to Quash Claimant's Appeal on September 6, 2022, arguing that Claimant's appeal was untimely and that the Board lacked jurisdiction to review the merits thereof. The Board granted Employer's Motion to Quash on January 4, 2023. The Board noted that Claimant provided no explanation for the untimely filing. Moreover, the Board opined that it would affirm the WCJ's decision, even if Claimant's appeal had been timely, based on the WCJ's findings of fact and credibility determinations. This appeal followed.[3]

## II. Issue

On appeal, Claimant argues that the WCJ's decision denying his claim petition is not supported by the evidence. Claimant makes no argument regarding the timeliness of his appeal to the Board.[4]

## III. Discussion

Section 432(a) of the Workers' Compensation Act (Act)[5] provides that an appeal from a WCJ's decision must be filed within 20 days. "When any period of

---

acknowledged this issue as a source of "hostility" between Claimant and Employer, it did not factor in the WCJ's decision to deny Claimant's claim petitions. C.R., Item No. 6.

[3] This Court's review is limited to determining whether constitutional rights were violated, errors of law were committed, or necessary findings of fact were supported by substantial evidence. *Stepp v. Workers' Comp. Appeal Bd. (FairPoint Commc'ns, Inc.)*, 99 A.3d 598, 601 n.6 (Pa. Cmwlth. 2014). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.*

[4] Employer filed a Motion to Quash Claimant's appeal with this Court on April 14, 2023, citing the untimeliness of Claimant's appeal to the Board. Because Claimant preserved the issue in his initial filing with this Court, we denied Employer's Motion to Quash on June 2, 2023.

[5] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 853.

time is referred to in any statute, such period . . . shall be so computed as to exclude the first and include the last day of such period."[6] The 20-day appeal period set forth in Section 432(a) is to be strictly observed, and the time for taking an administrative appeal cannot be extended as a matter of grace or mere indulgence. *Mills v. Workers' Comp. Appeal Bd. (Sch. Dist. of Harrisburg)*, 24 A.3d 1094, 1097 (Pa. Cmwlth. 2011). The timeliness of an appeal is a jurisdictional issue. *Sellers v. Workers' Comp. Appeal Bd. (HMT Constr. Servs., Inc.)*, 713 A.2d 87, 89 (Pa. 1998). The Board does not have jurisdiction to reach the merits of an untimely appeal. *Id.* The Board may, however, extend the time for taking an appeal "upon cause shown[.]" 77 P.S. § 853.

An appeal *nunc pro tunc* will be allowed where the appeal was untimely filed due to fraud or a breakdown in the administrative process. *Bass v. Commonwealth*, 401 A.2d 1133, 1135 (Pa. 1979). *Nunc pro tunc* relief is also appropriate where an appeal is untimely due to non-negligent circumstances, as they relate to the petitioner or the petitioner's counsel, where the petitioner's notice of appeal was filed shortly after the expiration date, and where the respondent is not prejudiced by the delay. *Criss v. Wise*, 781 A.2d 1156, 1159 (Pa. 2001). A *nunc pro tunc* appeal in non-negligent circumstances only applies "in unique and compelling cases" in which the petitioner establishes that he attempted to file an appeal but was precluded from doing so by "unforeseeable and unavoidable events[.]" *Id.* at 1160.

Instantly, the WCJ circulated his decision denying Claimant's claim petitions on August 10, 2022. Pursuant to Section 1908 of the Statutory Construction Act of 1972, the 20-day period Claimant had in which to file his appeal with the Board commenced on August 11, 2022, and expired on August 30, 2022. Because

---

[6] Section 1908 of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1908.

Claimant filed his appeal on August 31, 2022, it was unquestionably one day late. In granting Employer's Motion to Quash, the Board noted that Claimant provided no explanation for his late appeal. As a result, the Board concluded that it lacked jurisdiction to consider Claimant's appeal. Even if it could review the merits of Claimant's appeal, the Board opined that it would have affirmed the WCJ, as the WCJ's findings were supported by substantial evidence.

Claimant's appeal to this Court similarly lacks any justification or excuse for the untimely appeal.[7] Instead, Claimant either recites testimony that favors his position, or he attempts to clarify testimony that the WCJ discredited. Claimant also attacks the WCJ's credibility determinations and the weight given to the evidence presented. The WCJ, as factfinder, has exclusive authority over the credibility of witnesses and the weight given to the evidence. *Rogele, Inc. v. Workers' Comp. Appeal Bd. (Hall)*, 198 A.3d 1195, 1204 (Pa. Cmwlth. 2018). This Court may not reweigh the evidence, or the WCJ's credibility determinations, and a WCJ's credibility determinations will be upheld on appeal unless made arbitrarily or capriciously. *Id.*

---

[7] Claimant asserts in the Petition for Review (PFR) filed with this Court that the period for filing his appeal commenced on August 11, 2022, the day after the WCJ issued its August 10, 2022 decision denying Claimant's claim petitions. By Claimant's calculations, the 20-day period ended on August 31, 2022. Therefore, Claimant maintains that his appeal to the Board was timely. We cannot agree, as Claimant's calculation incorrectly omits August 11, 2022, from the appeal period. While Claimant alleges in his PFR that a clerk working for the Board advised him that the appeal period ended on August 31, 2022, there is no evidence to support this allegation. Moreover, Claimant did not raise this issue before the Board, which noted that Claimant provided no explanation for his untimely filing. To the extent Claimant's PFR asserts an administrative breakdown caused by an employee of the Board, the issue is waived. *GMS Mine Repair & Maint., Inc. v. Workers' Comp. Appeal Bd. (Way)*, 29 A.3d 1193 (Pa. Cmwlth. 2011) (issue is waived unless preserved at every stage of the proceeding).

In the absence of circumstances warranting *nunc pro tunc* relief, the Board correctly concluded that it lacked jurisdiction to hear the merits of Claimant's appeal, and the Board did not err in granting Employer's Motion to Quash. Accordingly, we affirm the Board.

_____
ELLEN CEISLER, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Peter Oldfield, | : | |
| Petitioner | : | |
| | : | |
| v. | : | No. 233 C.D. 2023 |
| | : | |
| Popcorn Alley, Inc. (Workers' | : | |
| Compensation Appeal Board), | : | |
| Respondent | : | |

# **O R D E R**

AND NOW, this 2nd day of July, 2024, the January 4, 2023 order of the Workers' Compensation Appeal Board is hereby AFFIRMED.

_____

ELLEN CEISLER, Judge